## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## SAN ANGELO DIVISION

|  |  |  |
|---|---|---|
| | § | |
| CHARLOTTE NICHOLS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | Civil Action No. 6:05-CV-081-C |
| | § | ECF |
| | § | Referred to the U.S. Magistrate Judge |
| MICHAEL J. ASTRUE[1], | § | |
| Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

## REPORT AND RECOMMENDATION

**THIS MATTER** is before the court upon Plaintiff's complaint filed November 28, 2005, for judicial review of the administrative decision of the Commissioner of Social Security denying Plaintiff's applications for a period of disability and disability insurance benefits and for supplemental security income benefits under Title II and Title XVI of the Social Security Act. Plaintiff filed a brief in support of her complaint on April 26, 2006, and Defendant filed a brief on May 17, 2006. The United States District Judge, pursuant to 28 U.S.C. § 636(b), referred this matter to the United States Magistrate Judge for report and recommendation, proposed findings of fact and conclusions of law, and a proposed judgment. This court, having considered the pleadings, the briefs, and the administrative record, recommends that the United States District Judge affirm the Commissioner's decision and dismiss the complaint with prejudice.

---

[1]    Michael J. Astrue has been appointed as the new Commissioner of Social Security, effective February 12, 2007, and is therefore substituted as Defendant in this matter for Jo Anne B. Barnhart, per FED. R. CIV. P. 25(d)(1).

## I.   STATEMENT OF THE CASE

Plaintiff filed applications for a period of disability and disability insurance benefits and for supplemental security income benefits on March 5, 2003, with a protective filing date of December 30, 2002, for the SSI application, alleging disability beginning April 10, 1998.  Tr. 16, 101-03, 469-71.  Plaintiff's applications were denied initially and upon reconsideration.  Tr. 16, 61-64, 66-61, 480-82, 473-78.  Plaintiff filed a Request for Hearing by Administrative Law Judge on October 2, 2003, and this matter came for hearing before the Administrative Law Judge ("ALJ") on March 8, 2005.  Tr. 16, 25-47, 59-60.  Plaintiff, represented by a non-attorney, testified in her own behalf.  Tr. 28-43.  Michael Driscoll, a vocational expert ("VE"), appeared and testified as well.  Tr. 43-47.  At the hearing, Plaintiff requested that her alleged onset date be amended to July 29, 2000.  Tr. 17.  The ALJ issued a decision unfavorable to Plaintiff on April 28, 2005.  Tr. 13-23.

In his opinion the ALJ noted that the specific issue was whether Plaintiff was under a disability within the meaning of the Social Security Act.  He found that:  Plaintiff met the disability insured status requirements on July 29, 2000, and Plaintiff had not engaged in substantial gainful activity at any time since July 29, 2000.  Tr. 17.  Plaintiff has "severe" impairments, including depression, heart disease, back problems, panic attacks, fibromyalgia, poor concentration, and migraines.  *Id.*  Plaintiff's severe impairments, singularly or in combination, were not severe enough to meet or equal in severity any impairment listed in the Listing of Impairments, 20 C.F.R. Part 404, Subpt. P, App. 1.  Tr. 20.  Therefore, the ALJ was required to determine whether Plaintiff retained the residual functional capacity ("RFC") to perform her past relevant work or other work existing in the national economy.

The ALJ found that based on the evidence in the record, Plaintiff's statements concerning her impairments and their impact on her ability to work were not entirely credible.  *Id.*

-2-

The ALJ found that Plaintiff could not return to her past relevant work.  Tr. 21.  He noted that Plaintiff was considered a person "closely approaching advanced age" with a G.E.D. and some college.  20 C.F.R. §§ 416.963, 416.964; Tr. 20.

The ALJ found that Plaintiff retained the RFC to perform light work activity, limited to jobs that require only occasional climbing of ramps and stairs and no climbing of ladders or scaffolds, no more than superficial contact with the public, and a reasoning development level of 1, 2, or 3 (as defined in the *Dictionary of Occupational Titles*[2]).  *Id.*  Having found that Plaintiff could not perform the full range of light work, the ALJ turned to the testimony of the VE in determining whether Plaintiff was capable of making a vocational adjustment to other work despite her severe impairments.  Tr. 22.  He relied upon the testimony of the VE who indicated that a hypothetical person of Plaintiff's age, with Plaintiff's RFC and vocational history, could perform work which exists in the national economy, including the jobs of small products assembler, with 5,400 jobs in Texas and 193,000 jobs nationally; motel cleaner, with 18,000 jobs in Texas and 264,000 jobs nationally; and storage facility rental clerk, with 2,300 jobs in Texas and 188,000 jobs nationally.  *Id.*  The ALJ, therefore, concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time through the date of his decision.  Tr. 22-23.

Plaintiff submitted a Request for Review of Hearing Decision/Order on June 26, 2005.  Tr. 9-10.  After granting a 25-day extension, the Appeals Council issued its opinion on September 23, 2005, indicating that although it had considered the contentions raised in Plaintiff's Request for Review, it nevertheless concluded that there was no basis for changing the ALJ's decision and denied Plaintiff's request.  Tr. 4-6.  The ALJ's decision, therefore, became the final decision of the Commissioner.

---

[2]       United States Dept. of Labor, Employment & Training Admin., *Dictionary of Occupational Titles* (4th ed. 1991)("DOT").

On November 28, 2005, Plaintiff commenced this action which seeks judicial review of the Commissioner's decision that Plaintiff was not disabled.

## II.   STANDARD OF REVIEW

An individual may obtain a review of the final decision of the Commissioner by a United States District Court. 42 U.S.C. § 405(g).  The court's review of a denial of disability benefits is limited to determining whether the decision is supported by substantial evidence and whether the Commissioner applied the proper legal standards. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002) (citing *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000)). Substantial evidence "is more than a mere scintilla and less than a preponderance" and includes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002); *Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002).  The court will not re-weigh the evidence, try the questions *de novo*, or substitute its judgment for the Commissioner's, even if the court believes that the evidence weighs against the Commissioner's decision. *Masterson,* 309 F.3d at 272. "[C]onflicts in the evidence are for the Commissioner and not the courts to resolve." *Id.* (quoting *Newton v. Apfel,* 209 F.3d 448, 452 (5th Cir. 2000)).

 In order to qualify for disability insurance benefits or supplemental security income, a claimant has the burden of proving that he or she has a medically determinable physical or mental impairment lasting at least 12 months that prevents the claimant from engaging in substantial gainful activity.  Substantial gainful activity is defined as work activity involving significant physical or mental abilities for pay or profit. *Newton,* 209 F.3d at 452; s*ee* 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1527(a)(1).

The Commissioner follows a five-step process for determining whether a claimant is disabled within the meaning of the Social Security Act. 20 C.F.R. § 404.1520; *Masterson*, 309 F.3d at 271;

*Newton*, 209 F.3d at 453.  In this case, the ALJ found at step 5 that Plaintiff was not disabled because she retained the ability to perform work in the national economy.  Tr. 22.

## III.   DISCUSSION

Plaintiff claims that the ALJ's determination of Plaintiff's RFC is not supported by substantial evidence because the ALJ failed to appropriately consider the opinions of her treating physicians and failed to carry his burden at step 5 to show that she can perform other work which exists in the national economy.

Plaintiff argues that the ALJ's decision and RFC determination are not supported by substantial evidence because the ALJ failed to appropriately consider and weigh the opinions of her treating physicians and failed to show that she could perform other work which exists in the national economy.    The ultimate issue is whether the ALJ's decision is supported by substantial evidence. The court, therefore, must review the record to determine whether it "yields such evidence as would allow a reasonable mind to accept the conclusion reached by the ALJ." *Loza v. Apfel,* 219 F.3d 378, 393 (5th Cir. 2000).

**A.      Whether the ALJ erred by failing to consider and give appropriate weight to the opinions of Plaintiff's treating physician and of the psychiatric consultative examiner**.

Plaintiff argues that the ALJ erred by failing to appropriately weigh and consider the opinions of her treating physicians and of the psychiatric consultative examiner ("CE").  She notes that Dr. Nenita Sabater opined that she was unable to work, that Dr. Sabater and other MHMR

providers indicated that she had a Global Assessment of Functioning ("GAF")[3] score of 45[4], and that Dr. G. Alan Trimble, the psychiatric CE, indicated that Plaintiff had a GAF score of 50.

Plaintiff was treated for acute inferior myocardial infarction on December 10, 2002. Tr. 192. She underwent cardiac catheterization and stents were placed. Tr. 190-91. Plaintiff sought treatment in the emergency room for various medical problems, including complaints of chest pain, sinusitis, back pain, heart palpitations, flu-like symptoms, and diarrhea. Testing has also indicated bilateral spondylolysis at L5 with no demonstrated listhesis and diffuse mild lumbar spondylosis. Tr. 283. The record also demonstrates that Plaintiff has been treated for hypertension, swelling, and her heart problems.

Plaintiff underwent a psychiatric evaluation on April 29, 2003, by Dr. Trimble. Tr. 213-17. Dr. Trimble noted Plaintiff's report of symptoms of depression including dysphoric mood, loss of interest, overeating, global insomnia, fatigue, loss of energy, feelings of worthlessness, difficulty concentrating, and suicidal ideation with a history of suicide attempts by overdose and by wrecking a car. Tr. 214. He noted Plaintiff's report of previous hospitalizations in 1991, 1993, and 1995. *Id*. Dr. Trimble noted that upon examination, Plaintiff was adequately groomed with no evidence of abnormal motor activity or mannerisms, although there was decreased eye contract. Tr. 215. He noted that Plaintiff was spontaneous, coherent, relevant, and logical. *Id*. He noted that there were no abnormalities in speed or quality of speech, and there was no evidence of tangents, flights of ideas, circumstantiality, or perserverations. *Id*. He noted that Plaintiff's mood was depressed with

---

[3]       The GAF score on Axis V is for reporting the client's "psychological, social, and occupational functioning." *See American Psychiatric Assoc., Diagnostic and Statistical Manual of Mental Disorders* (4th ed. 1994) at 32. This report of overall functioning is noted to be "useful in planning treatment and measuring its impact, and in predicting outcome." *Id*.

[4]       A GAF of 41 to 50 indicates "serious symptoms" or "any serious impairment in social, occupational, or school functioning. *American Psychiatric Assoc., Diagnostic and Statistical Manual of Mental Disorders* (4th ed. 1994) at 324.

blunt affect, with no evidence of thought disturbances, delusions, hallucinations, or suicidal ideation, except as subjectively reported. *Id.* Dr. Trimble reported that Plaintiff was oriented to person, place, and time and was able to perform a digit span of six numbers forward, as well as her social security number forward and backward. *Id.* He opined that Plaintiff's remote memory and judgment were intact, with an adequate fund of general knowledge and fair insight. Tr. 214-15. He specifically opined that Plaintiff's concentration, persistence, and pace were adequate during the examination. Tr. 216. Dr. Trimble opined that Plaintiff's ability to cook, shop, and perform chores was impaired "due to lack of motivation and chronic pain." *Id.* He noted that although Plaintiff has conflicts with her step-father, she otherwise gets along well with her family but avoids people in general. *Id.*

Dr. Trimble opined that on Axis I[5], Plaintiff's diagnosis was major depressive disorder, chronic and bulimia nervosa. *Id.* Dr. Trimble opined that Plaintiff had a GAF score of 50 on Axis V and also opined that her GAF score was 50 at both the lowest and highest point during the previous year. Tr. 217. Dr. Trimble also opined that her course of function with current treatment was guarded and with no treatment was poor. *Id.*

Plaintiff also underwent treatment at the Central Texas Mental Health - Mental Retardation Center "MHMR." A February 21, 2001, progress note indicates that Plaintiff was in a sad mood with evidence of poor memory. Tr. 437. Harold B. Eudaly, M.D., her psychiatrist, opined that she had depression and panic with inadequate control. *Id.* He adjusted her medications. *Id.* Plaintiff's medication was again adjusted on March 9, 2001. Tr. 436. Dr. Eudaly noted on March 21, 2001,

---

[5]    The axial system of evaluation is used to facilitate comprehensive and systematic evaluation with attention to the various mental disorders; general medical conditions; psychosocial and environmental problems; and level of functioning. *See generally, American Psychiatric Assoc., Diagnostic and Statistical Manual of Mental Disorders* (4th ed. 1994) at 27. An Axis I diagnosis is used to report all clinical disorders except for personality disorders and mental retardation, which are reported on Axis II. *Id.* at 27-28.

that Plaintiff's mood was depessed, and her affective responses were blunt.  Tr. 435.  However, Plaintiff was adequately groomed and her basic memory appeared intact.  *Id*.  On April 18, 2001, Dr. Eudaly noted that Plaintiff's mood seemed fairly normal, thinking was clear, memory was intact, and his assessment was improving depression and concentration.  Tr. 434.  On July 25, 2001, Dr. Eudaly noted that Plaintiff was calm and in a pleasant mood with clear thinking and normal memory and orientation.  Tr. 432.  His assessment was that they were approaching control of Plaintiff's depression.  *Id*.  Plaintiff reported on October 3, 2001, that she was experiencing stressful events which were depressive to her.  Tr. 430.  On October 31, 2001, Dr. Eudaly opined that Plaintiff was not in remission.  Tr. 429.  However, on November 27, 2001, Dr. Eudaly opined that Plaintiff had adequate control of her depression on current medication.  Tr. 428.  Plaintiff reported that she felt no depression.  *Id*.

Plaintiff's depression appeared to have worsened on February 5, 2002.  Tr. 427.  At her subsequent appointment on April 16, 2002, Dr. Eudaly noted Plaintiff's incomplete response to the medication and offered her a trial of another medication, which Plaintiff refused.  Tr. 426.  On July 23, 2002, Dr. Eudaly opined that Plaintiff had adequate control on her current medications.  Tr. 425.  He noted that Plaintiff's mood was depressed, but her thinking was clear, and his assessment was of continued depression.  Tr. 424.

Progress notes from MHMR providers indicate that Plaintiff demonstrated a lack of progress on October 25, 2002.  Tr. 414.  On October 29, 2002, it was noted that she was feeling better.  Tr. 410.  Plaintiff apparently stopped taking one of her prescribed medications, and Dr. Eudaly noted that "[w]ithin a few days, she was back to her usual state as far as feelings, although she continued to feel depressed.  Her thinking was also more normal."  Tr. 402.  He noted that Plaintiff was moderately depressed but does smile and make eye contact and was adequately groomed.  *Id*.  He also noted that Plaintiff's thinking was clear and memory and orientation were normal.  *Id*.  After

her heart problems, Plaintiff reported spells of depression but indicated that her medication is helping.   Tr. 393.   On September 9, 2003, Plaintiff saw a new psychiatrist through MHMR, Charles R. Biggs, D.O., who added a number of Axis I diagnoses, including generalized anxiety disorder, bulimia nervosa, and social phobia, and who changed the diagnosis of major depressive disorder to bipolar II disorder, mixed, with most recent episode mixed, recurrent, severe, without psychotic features. Tr. 386.  Dr. Biggs also adjusted Plaintiff's medications.  Tr. 387.  However, Dr. Sabater, who saw her on January 22, 2004, indicated a diagnosis of major depressive disorder, recurrent, severe, without psychotic symptoms.  Tr. 383.  Dr. Sabater also indicated that although Plaintiff experiences depressive days and crying spells and sleeps poorly at times, Plaintiff had adequate control of her depression on her current medications.  *Id*.  On October 9, 2003, Plaintiff's medical provider noted that she was supposed to be taking Buspar but had stopped that and Lipitor because she thought she was overmedicated.  Tr. 253.  On October 30, 2003, she reported that she was depressed and her medical provider noted her report of changing medication.  Tr. 251. Adequate control of Plaintiff's depression was again noted on August 11, 2004, by an MHMR provider.  Tr. 447.  She was noted to be in partial remission on December 9, 2004.  Tr. 444.

Plaintiff's treatment notes from the Central Texas Women's Clinic dated September 14, 2004, indicate that Plaintiff appears very depressed. Tr. 450. A progress note from the Brownwood Community Health Center dated October 13, 2004, indicates that Plaintiff "is just so depressed." Tr. 454.

A February 23, 2005, progress note from Dr. George Tipton indicates that Plaintiff has a long history of depression.  Tr. 468.  Dr. Tipton noted that Plaintiff "appears depressed" and also noted that there was no objective evidence of psychosis.  *Id*.  He indicated that Plaintiff should return in three months.  *Id*.

Plaintiff argues that the ALJ erred by failing to consider that her treating doctor found that she was unable to work in 2004.  Pl. Brief at 5.  Plaintiff notes that she was found to have a GAF score of 45, which demonstrates that she is unable to keep a job.  *Id.* at 5-6.

Plaintiff correctly notes that a treating doctor's opinion is to be given great weight.  The opinion of a treating physician who is familiar with the claimant's impairments, treatments, and responses should be accorded great weight in determining disability. A treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2).  On the other hand,  "[g]ood cause may permit an ALJ to discount the weight of a treating physician relative to other experts where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence." *Newton*, 209 F.3d at 456.

Plaintiff argues that the ALJ erred by failing to give appropriate weight to the opinions of her treating physicians and the opinion of Dr. Trimble, the psychiatric CE.  While Plaintiff argues that her treating physician's GAF scare of 45 demonstrates that she is "unable to work," her argument is not supported by the facts.  Dr. Sabater's GAF score represents a tool she used in the course of her examination, diagnosis, and treatment.  While the GAF score may constitute a recognition of limitations imposed by the mental condition, the score alone does not delineate specific limitations imposed by an impairment upon a specific individual.  In any case, "[w]hile a GAF score may be of considerable help to the ALJ in formulating the RFC, it is not essential to the RFC's accuracy."  *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002).  This is underscored by the fact that although the MHMR treatment and progress notes repeatedly note a GAF score of 45, they also indicate that Plaintiff's depression was adequately controlled by her

medications.  *See* Tr. 383.  While the progress notes state that Plaintiff is "unable to work," this same note indicates that Plaintiff "[c]ontinues to assist boyfriend with shop that he owns."  *Id*. Another MHMR provider indicated a GAF of 45 on July 23, 2002, but also indicated that Plaintiff was helping her boyfriend with the shop that he owns. Tr. 425.  The provider also indicated that there was "adequate control" of Plaintiff's depression with her current medications.  *Id*.  In addition, progress was noted on February 4, 2003.  Tr. 388.  The differences between the GAF score and the actual limitations imposed by an impairment is highlighted when looking at the DSM-IV's description of a GAF score of 41-50 – "no friends, unable to keep a job."[6]  While Dr. Trimble indicated this GAF score, he also specifically noted that Plaintiff got along with her family, except her stepfather, and had at least one friend.  Tr. 216.  While Dr. Sabater opined that Plaintiff was unable to work, she also noted that Plaintiff had socialized with her boyfriend and family, contacted her parents daily, and continued to assist her boyfriend with the shop that he owned.  Tr. 383.

Plaintiff correctly notes that Dr. Sabater indicated that she was "unable to work."  *See Id*. However, "[a]mong the opinions by treating doctors that have no special significance are determinations that an applicant is 'disabled' or 'unable to work.'  These determinations are legal conclusions that the regulation describes as 'reserved to the Commissioner.'"  *Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003) (citing 20 C.F.R. § 404.1527(e)(1)).  Insofar as Dr. Sabater opined that Plaintiff was unable to work, the ALJ was not required to give such opinions any particular significance.  The ALJ did not err by failing to accord "controlling weight" or any special weight to Dr. Sabater's opinion that Plaintiff should not work.

Unless the Commissioner gives a treating source's opinion controlling weight, the Commissioner will consider six factors in deciding the weight to give to any medical opinion.  20

---

[6] *See Id.* at 34.

C.F.R. § 404.1527(d).  The Fifth Circuit held in *Newton* that "an ALJ is required to consider each of the [six] factors before declining to give any weight to the opinions of the claimant's treating specialist."  *Newton,* 209 F.3d at 456.  Thus, the ALJ is required to consider the six factors if he declines to give the opinion of a treating specialist any weight.  Pursuant to Soc. Sec. Ruling 96-2p(July 2, 1996)("SSR 96-2p"), and 20 CFR §§ 404.1527(a) and 416.927(a), "medical opinions" are opinions about the nature and severity of an individual's impairment(s) and are the only opinions that may be entitled to controlling weight.  The requirement that the ALJ discuss the six factors set forth in *Newton* and 20 C.F.R. § 404.1527(d) applies only to medical opinions and does not apply to conclusory statements that a claimant is disabled.  *Frank*, 326 F.3d at 620.

The ALJ's decision indicated that he considered Dr. Sabater's January 2004 statement indicating that Plaintiff was unable to work and indicated that this statement was not supported by Plaintiff's medical records and found that her opinion warranted "very limited probative value."  Tr. 21.  As noted above, the ALJ was not required to give any special weight to Dr. Sabater's opinion that Plaintiff was unable to work.  In addition, as noted above, Dr. Sabater and other treating providers indicated that Plaintiff was working in her boyfriend's shop during the relevant period.

Plaintiff argues that the ALJ relied upon a single instance in the record indicating improvement.  However, the record indicates that although Plaintiff continued to have depression, she experienced progress in her treatment, and her depression was controlled by her medications.  *See, e.g.,* Tr. 410 (Plaintiff "feeling better"), 402 (Plaintiff moderately depressed), 393 (medication helping although Plaintiff experienced worsened depression during her heart problems), 398 (adequate control of depression despite depressive days, crying spells, and sleeping poorly at times), 447 (adequate control of depression), 444 (partial remission of depression).  Clearly, the evidence of record demonstrates that Plaintiff experienced depression, which did worsen at times and which did improve.  The ALJ found that Plaintiff's depression and anxiety constituted "severe

impairments." However, the ALJ did not rely upon only a single notation in the record indicating improvement in finding that Plaintiff's depression did not prevent her from working. Rather, the ALJ's opinion demonstrates that he considered the record as a whole. The ALJ did not err by finding that Dr. Sabater's opinion that she was unable to work warranted "very little probative value," nor was he required to apply the six factors set forth in *Newton* and 20 C.F.R. § 404.1527(d) in evaluating this opinion.

The ALJ also addressed the opinion and findings of Dr. Trimble, the psychiatric CE. Tr. 18. He noted that Dr. Trimble assigned Plaintiff a GAF score of 50, indicated that she exhibited adequate memory and concentration, reported a lengthy history of treatment for depression, and reported activities such as preparing meals, shopping for groceries, driving, occasionally going out to eat, avoiding people in general, and getting along with her family and having at least one friend. *Id.*

The ALJ found that Plaintiff was mildly limited in her daily activities, noting that she prepares meals, shops for groceries, drives, and goes out to eat on occasion. Tr. 18-19. He found that she was moderately limited in her social functioning, noting Plaintiff's report of getting along well with her family and one friend, although avoiding people in general. Tr. 19. He found that Plaintiff was mildly limited in concentration, persistence, and pace, noting that Plaintiff exhibited adequate memory and concentration during Dr. Trimble's psychiatric consultative examination. *Id.* The ALJ noted that there was evidence of one episode of decompensation but no evidence of "repeated" episodes of decompensation which would be incompatible with the ability to perform gainful activity. *Id.*

The ALJ indicated in his opinion that Plaintiff's depression "appears to respond well to medication." *Id.* He found that Plaintiff retained the ability to perform basic work activities in a routine work setting. *Id.* The ALJ found that Plaintiff retained the residual functional capacity, over

a sustained period of time, to perform the full range of light work, except that she is limited to jobs requiring only occasional climbing of ramps and stairs; no climbing of ladders or scaffolds; no more than superficial contact with the public; and a reasoning development level of 1, 2, or 3, as defined in the *Dictionary of Occupational Titles*.  Tr. 21.  The ALJ's RFC finding is consistent with Dr. Trimble's indication that Plaintiff's attention and concentration were adequate.  In addition, the RFC finding provides that Plaintiff should have no more than superficial contact with the public.  This is consistent with Dr. Trimble's indication that Plaintiff gets along with her family and one friend but otherwise avoids people in general.  Tr. 216.

Plaintiff essentially argues that the GAF scores of Dr. Trimble and Dr. Sabater are opinions that Plaintiff "was seriously impaired in her social and occupational functioning."  Pl. Brief at 7.  However, the assessments of Dr. Trimble and Dr. Sabater do not indicate specific limitations caused by Plaintiff's impairments, other than those incorporated by the ALJ into the RFC finding.  As noted above, although each ascribed a GAF score in the 41-50 range, the detailed notes of Drs. Sabater and Trimble conflict with the DSM-IV examples of serious impairment in social or occupational functioning. The ALJ did not reject Dr. Trimble's opinion, nor did he reject any opinions of the treating physicians, except the opinion that Plaintiff is unable to work, which was properly accorded no special weight.  The ALJ also discussed the GAF scores and the inconsistency between Dr. Sabater's GAF score and her statement that Plaintiff was "unable to work," in the context of the notations that Plaintiff was at the same time helping her boyfriend with his shop.

As noted above, the ALJ is permitted to "discount the weight of a treating physician relative to other experts where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence."  *Newton*, 209 F.3d 456.  SSR 96-2p provides that a medical source statement from a treating source which is well-supported by medically acceptable evidence and which is not

inconsistent with other substantial evidence in the record is entitled to controlling weight. *See* SSR

96-2p. This ruling further explains:

> If any of the above factors is not satisfied, a treating source's opinion cannot be
> entitled to controlling weight. It is an error to give an opinion controlling weight
> simply because it is the opinion of a treating source if it is not well-supported by
> medically acceptable clinical and laboratory diagnostic techniques or if it is
> inconsistent with the other substantial evidence in the case record.

SSR 96-2p. Here, the ALJ found that Dr. Sabater's assessment that Plaintiff was unable to work was

not well-supported and that this assessment was inconsistent with other substantial evidence in the

record, including the report that Plaintiff was helping her boyfriend with his shop and the reports

that Plaintiff's depression was controlled by medications. Moreover, the ALJ appropriately

discussed and considered the opinion of the psychiatric CE. His RFC assessment is consistent with

the specific limitations noted by Dr. Trimble. The ALJ did not err by failing to appropriately

consider or weigh the opinions of Plaintiff's treating physicians or the opinion of the psychiatric CE.

**B.      Whether the ALJ erred by failing to recontact Plaintiff's treating physician**.

Plaintiff further argues that the ALJ was "required to seek additional clarification from the

treating physician at any time that he concludes that the treating doctor's records are inconclusive

or inadequate," citing *Newton* and *Myers*. Pl. Brief at 8. She argues that the ALJ erred by failing

to recontact her treating physician before declining to give controlling weight to Dr. Sabater's, or

any other MHMR physician's, opinion.

Failure to recontact a medical source may constitute reversible error. In *Ripley*, the

Commissioner's decision was reversed and the matter remanded with instructions to obtain a report

from a treating physician when the evidentiary record contained no medical source evidence

whatsoever regarding the effects of the claimant's impairment on his ability to work. *See Ripley v.*

*Chater*, 67 F.3d 552, 557-58 (5th Cir. 1995). In *Myers*, the Commissioner's decision was reversed

and remanded where the ALJ had "summarily rejected the opinions of [the claimant's] treating

physician, based only on the testimony of a non-specialty medical expert who had not examined the claimant." *Myers v. Apfel*, 238 F.3d 617, 621 (5th Cir. 2001).

Applicable case law in the Fifth Circuit requires remand for failure to recontact a treating physician when the physician's records are inconclusive or otherwise inadequate to receive controlling weight, the record contains no other medical opinion evidence based on personal examination or treatment, and the claimant proves prejudice. *Newton*, 209 F.3d at 453. Thus, the duty to recontact a claimant's treating medical source is limited to cases where existing medical evidence is inadequate to make a disability determination, either because it is internally conflicting, is incomplete, or is based on unconventional or questionable diagnostic techniques.

In this case the record contains other medical opinion evidence based on personal examination or treatment. *Id*. Also, the record contains substantial evidence to support the ALJ's RFC finding. Moreover, the ALJ was not required to give any special weight to the conculsory opinion that Plaintiff was "unable to work." The ALJ had sufficient evidence before him to make the disability determination. Therefore, the ALJ did not err by failing to recontact Dr. Sabater or any other MHMR treating physician before declining to give controlling weight to her opinion that Plaintiff was "unable to work."

**C.    Whether the RFC assessment by the ALJ fails to reflect the limitations imposed by Plaintiff's impairments.**

Plaintiff argues that the ALJ's RFC assessment does not reflect the limitations imposed by her impairments. She notes that Dr. Trimble indicated that she had a GAF score of 50. She points to the notations in the record indicating that she suffered from depression, that she did not progress at times, and that she had anxiety, mood swings, and problems with eating. It is, of course, the ALJ's responsibility to determine a claimant's RFC, and such an assessment is not a medical opinion. *See* 20 C.F.R. §§ 416.946, 416.927(e). The ALJ is not required to incorporate any specific

limitations into his RFC assessment simply because it appears in a medical opinion. Rather, the ALJ has the sole responsibility for weighing the evidence, may choose whichever physician's diagnosis is most supported by the record, and may incorporate into the RFC assessment the limitations supported by that diagnosis or diagnoses. *See Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991). The ALJ also has the responsibility to resolve questions of credibility and questions arising from conflicting medical opinions. *Masterson*, 309 F.3d at 272. The task of weighing the evidence is the province of the ALJ. *Chambliss v. Massanari*, 269 F.3d 520, 523 (5th Cir. 2001). The relative weight to be given these pieces of evidence is within the ALJ's discretion. *Id.*

The ALJ found that Plaintiff had "severe" impairments, which included depression and panic attacks. The ALJ specifically found that such impairments mildly limited her activities of daily living; moderately limited her social functioning; mildly limited her concentration, persistence, and pace; and resulted in one episode of decompensation. Tr. 18-19. He specifically noted that his RFC assessment reflects nonexertional limitations in consideration of Plaintiff's mental impairments. Tr. 19. While Plaintiff argues that the RFC assessment does not reflect all of the limitations imposed by her impairments, the record demonstrates that the ALJ properly exercised his responsibility as factfinder in weighing the evidence and in choosing to incorporate limitations into his RFC assessment that were most supported by the record. *Muse*, 925 F.2d at 790. I find that the ALJ appropriately considered the evidence as a whole in making his RFC assessment. He incorporated those limitations he accepted which were supported by substantial evidence in the record into his RFC finding. The RFC assessment is supported by substantial evidence in the record.

**D.      Whether the ALJ failed to carry his burden at step 5 to show that Plaintiff could perform work which exists in the national economy.**

Plaintiff argues that the ALJ erred and failed to carry his burden at step 5 of the sequential evaluation process to show that Plaintiff could perform work which exists in the national economy by relying upon testimony of the VE which conflicted with the DOT.

The ALJ presented the VE with a hypothetical question incorporating the following: an individual of Plaintiff's age and educational and vocational history, who could perform the full range of light work with the following additional limitations: only occasional climbing of ramps and stairs; no climbing of ladders or scaffolds; a reasoning development level of 1 through 3 as defined in the *Dictionary of Occupational Titles*; and no more than superficial contact with the public.  Tr. 44.  The VE testified that such a person could work as a small products assembler, motel cleaner, and storage facility rental clerk.  Tr. 44-45.  The VE was questioned as to the contact with the public with the rental clerk position.  Tr. 45.  The VE testified that such contact was "[j]ust superficial," and did not involve conflict resolution or trouble shooting.  *Id*.  The VE also testified that there was no conflict between his testimony and the DOT description of such jobs.  *Id*

Plaintiff argues that the ALJ erred by relying on such testimony by the VE and failed to carry his burden at step 5.  She argues that the job descriptions provided in the DOT conflict with the testimony of the VE.

A vocational expert is called to testify because of his familiarity with job requirements and working conditions. *Vaughan v. Shalala*, 58 F.3d 129, 132 (5th Cir. 1995) (citing *Fields v. Bowen*, 805 F.2d 1168, 1170 (5th Cir.1986)).  "The value of a vocational expert is that he is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed."  *Id.*    In testifying, a  vocational expert "is able to compare all the unique

requirements of a specified job with the particular ailments a claimant suffers in order to reach a reasoned conclusion whether the claimant can perform the specific job." *Fields*, 805 F.2d at 1170.

In *Carey v. Apfel,* the Fifth Circuit addressed a case where the claimant argued that the testimony of the VE, which the ALJ relied upon, conflicted with the *Dictionary of Occupational Titles*. *See Carey v. Apfel*, 230 F.3d 131, 146 (5th Cir. 2000). The Fifth Circuit again noted that "'[t]he value of a vocational expert is that he [or she] is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed,'" and found that "DOT job descriptions should not be given a role that is exclusive of more specific vocational expert testimony with respect to the effect of an individual claimant's limitations on his or her ability to perform a particular job." *Id.* at 145 (quoting *Fields*, 805 F.2d at 1170). The Court indicated its agreement with the majority of the circuits that the ALJ may rely upon the VE's testimony, provided that the record reflects an adequate basis for doing so. *Id.*

Plaintiff argues that the description of small products assembler, as found in the DOT, conflicts with the VE testimony because such description indicates that the employee "frequently works as a member of an assembly group." Pl. Brief at 13. She argues that this violates the limitation on more than superficial contact with the public. *Id*. Even though the ALJ found that Plaintiff should have no more than superficial contact with the public, he specifically found that Plaintiff retained the ability to respond appropriately to supervision and co-workers. Tr. 19. Thus, there is no direct conflict with the DOT between the RFC limitation of no more than superficial contact with the public and the DOT description indicating that a small products assembler frequently works as a member of an assembly group.

Plaintiff next argues that as a motel cleaner, she will have to deal with motel guests who approach her in the process of performing her work. She argues that such guests may be in the room

at the time that a motel cleaner comes to clean.  While the DOT description indicates that certain housekeeping cleaners may render personal assistance to patrons, the description does not specifically provide that a motel cleaner would have more than superficial contact with the public. Again, there is no direct conflict between this DOT description and the RFC finding or the VE testimony.

Plaintiff also claims that a rental clerk "will interact with those seeking to rent a storage space, seeking to get into the space and having problems with the space."  Pl. Brief at 13.  She argues that the exchange "becomes more than 'superficial' if the customer is unhappy either on the telephone or in person."  *Id*.  However, the VE specifically testified that contact would be "superficial in terms of renting units" and further testified that there was "no conflict resolution" and "no troubleshooting."  Tr. 45.  The VE testified, using his expertise, as to the nature and requirements of this specific job.

In this case there is no direct conflict with the DOT.  Rather, the VE testified about the way in which jobs are performed in specific settings.  Plaintiff has failed to demonstrate any actual conflict between the DOT and the VE testimony.

While *Carey* deals with a conflict between the testimony of the VE and the DOT, the finding that an ALJ may rely upon VE testimony with adequate support in the record is instructive in this matter.  Clearly, an ALJ may not rely on evidence provided by a VE if that evidence is based on underlying assumptions or definitions that are inconsistent with the agency's regulatory policies or definitions – such as exertional level, skill level, and transferability of skills.  *See* Soc. Sec. Ruling 00-4p (December 4, 2000)("SSR 00-4p").  This Ruling notes that neither the DOT nor evidence from a VE "trumps" the other.  *Id.*  Rather, "[t]he DOT lists maximum requirements of occupations as generally performed, not the range of requirements of a particular job as it is performed in

specific settings." *Id.*   However, the court is unable, in any event, to find any actual conflict between the testimony of the VE and the DOT.

I find that the ALJ did not err in making his RFC assessment, nor did he err by failing to appropriately consider and weigh the opinions of the treating and consulting physicians.  I further find that the ALJ appropriately considered the record as a whole in making his RFC assessment. I further find that the ALJ did not err by failing to recontact the treating physician and that he appropriately relied upon the testimony of the VE, thereby carrying his burden at step 5 to show that Plaintiff could perform other work which exists in the national economy.  The ALJ's opinion is supported by substantial evidence in the record.

## IV.    CONCLUSION

Based upon the foregoing discussion of the issues, the evidence, and the law, this court recommends that the United States District Judge affirm the Commissioner's decision and dismiss the Plaintiff's complaint with prejudice.

The United States District Clerk shall serve a true copy of these findings, conclusions, and recommendation on the parties.  Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions, and recommendation must serve and file written objections within 11 days after being served with a copy.  A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made.  The District Court need not consider frivolous, conclusory, or general objections.  A party's failure to file such written objections to these proposed findings, conclusions, and recommendation shall bar that party from a *de novo* determination by the District Court.   *See Thomas v. Arn*, 474 U.S. 140, 150, 106 S. Ct. 466, 472 (1985).  Additionally, any failure to file written objections to the proposed findings, conclusions, and recommendation within 11 days after being served with a copy

shall bar the aggrieved party from appealing the factual findings and legal conclusions of the United

States Magistrate Judge that are accepted by the District Court, except upon grounds of plain error.

*See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

     DATED this 5th day of March, 2007.

 

 

**PHILIP R. LANE**
**UNITED STATES MAGISTRATE JUDGE**